UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Pedro Ayala, Minda M. Bakken,
Diane B. Gray, and Charles M. Strauch,

      Plaintiffs,

v.                                                            Civ. No. 04-2984 (JNE/JSM)
                                                          ORDER

Graves Hospitality Corporation and
Block E Lodging, Inc., d/b/a Le Meridien
Minneapolis,

      Defendants.

---

Katherine C. Bischoff, Esq., Nichols Kaster & Anderson, PLLP, appeared for Plaintiffs Pedro Ayala, Minda M. Bakken, Diane B. Gray, and Charles M. Strauch.

Kevin R. Coan, Esq., Parsinen Kaplan Rosberg & Gotlieb, appeared for Defendants Graves Hospitality Corporation and Block E Lodging, Inc., d/b/a Le Meridien Minneapolis.

---

Pedro Ayala, Minda Bakken, Diane Gray, and Charles Strauch (collectively, Plaintiffs) allege that Graves Hospitality Corporation (GHC) and Block E Lodging, Inc. (BEL) (collectively, Defendants), terminated their employment because of their age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634 (2000), and the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363A.01-.41 (2004).[1] The case is before the Court on Defendants' motion for summary judgment. For the reasons set forth below, the Court grants Defendants' motion.

---

[1] Plaintiffs' class claims, Ayala's and Bakken's contract claims, Ayala's retaliation claim, and Gray's claim under Minn. Stat. § 181.64 (2004) have been dismissed.

# I.   BACKGROUND

Le Meridien Hotel Minneapolis (Hotel)[2] is a hotel located in downtown Minneapolis, Minnesota. The Hotel is managed by GHC and its employees are employed by BEL. Jim Graves is the President of GHC. Ben Graves is the Vice President of GHC and, beginning in May 2003, became the General Manager of the Hotel. The Hotel opened in April 2003. Prior to opening, the Hotel hired several employees and an executive management team.

In January 2003, Bakken began working as the Director of Human Resources. Bakken was fifty-two years old when she was hired. Bakken was responsible for recruiting and training employees, establishing the overall functions of the Human Resources (HR) Department, and establishing employee benefits. For example, Bakken was responsible for organizing a job fair and developing an employee handbook for the Hotel. Bakken was terminated on May 9, 2003. She was told that her position was being eliminated. Most of her duties were assumed by John Anderson, the Hotel's Controller.

In March 2003, Ayala began working as the Hotel's Executive Steward. Ayala was forty-three years old when he was hired. At a job fair, Ayala met with Bakken and interviewed with Seth Dougherty, the Hotel's Executive Chef. At the time he was interviewed, Ayala understood that the Hotel was not looking for an executive steward, but that "they were looking for someone just to be a supervisor." Nevertheless, he was hired as the Executive Steward. Ayala's duties included ensuring that the kitchen and back areas of the Hotel were clean, that all dish and silverware machines ran properly, and that the Hotel had sufficient china. Ayala also handled inventory and trained stewards. He worked primarily with the Executive Chef, cooks,

---

[2]   The Hotel is now known as the "Graves 601 Hotel."

kitchen personnel, stewards, and banquet managers. Ayala's position was eliminated and he was terminated in July 2003.

The Hotel hired Gray in April 2003 as the general cashier, payroll manager, and accounts receivable manager. Gray was forty-five years old when she was hired. Gray was charged with handling cash, making deposits, sending invoices to customers, entering invoices, processing payroll, and handling paychecks. Gray was terminated in May 2003. She was told her position was eliminated. Her duties were assumed by Anderson, the Hotel's Controller.

Strauch began working at the Hotel in May 2003 as a Bell Captain. Strauch was fifty-two years old when he was hired. As a Bell Captain, Strauch performed and supervised the tasks assigned to doormen, valets, and bellmen. Strauch was terminated on June 19, 2003. He was told that he did not "follow the corporate team philosophy."

Plaintiffs filed suit in this Court on June 17, 2004, alleging that Defendants discriminated against them on the basis of their age. Defendants now move for summary judgment.

## II.   DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Plaintiffs assert claims of age discrimination under the ADEA and the MHRA. Both statutes make it unlawful for an employer to discharge or otherwise discriminate against an individual with regard to compensation and other terms and conditions of employment on the basis of age. *See* 29 U.S.C. § 623(a)(1); Minn. Stat. § 363A.08, subd. 2. A plaintiff may demonstrate age discrimination by either direct or indirect evidence. *Fast v. S. Union Co.*, 149 F.3d 885, 890 (8th Cir. 1998). When a plaintiff puts forth direct evidence that age was used in the employer's decision to terminate the plaintiff, the burden-shifting standards of *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), apply to an ADEA claim. *Fast*, 149 F.3d at 890. When a plaintiff is unable to put forth direct evidence of age discrimination, the burden-shifting standards set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), apply to an ADEA claim. *Fast*, 149 F.3d at 890.

**A.**     ***McDonnell Douglas* analysis**

Because there is no direct evidence of discrimination, the Court analyzes Plaintiffs' ADEA claims under *McDonnell Douglas*. *Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 855 (8th Cir. 2003). In addition, as instructed by the Minnesota Supreme Court, the Court analyzes Plaintiffs' MHRA claims under *McDonnell Douglas. See Anderson v. Hunter, Keith, Marshall & Co.*, 417 N.W.2d 619, 626-27 (Minn. 1988); *see also Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 724 n.2 (8th Cir. 2001). Under *McDonnell Douglas*, Plaintiffs must establish a prima facie case of age discrimination, at which point Defendants must come forward with a legitimate, nondiscriminatory reason for their conduct. *Chambers*, 351 F.3d at 855. In response,

Plaintiffs must demonstrate that the nondiscriminatory reason offered by Defendants was a pretext for discrimination. *Id.*

To establish a prima facie case of age discrimination, Plaintiffs must show that: (1) they are members of a protected age group; (2) they were meeting the legitimate expectations of their employer; (3) they experienced an adverse employment action; and (4) there are facts that permit an inference of discrimination. *See Zhuang v. Datacard Corp.*, 414 F.3d 849, 854 (8th Cir. 2005). There is no dispute that each Plaintiff is over the age of forty and was terminated. Moreover, for the purposes of this motion, the Court assumes without deciding that each Plaintiff has established the remaining elements of a prima facie case of age discrimination.[3]

As discussed below, Defendants present legitimate, nondiscriminatory reasons for terminating Plaintiffs. Therefore, with respect to Plaintiffs' claims, the presumption of discrimination disappears and each Plaintiff can avoid summary judgment only if the evidence considered in its entirety (1) raises a question of material fact as to whether Defendants' proffered reasons are pretextual and (2) creates a reasonable inference that age was a determinative factor in Defendants' decision to terminate that Plaintiff. *See Kohrt v. MidAmerican Energy Co.*, 364 F.3d 894, 897 (8th Cir. 2004); *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 807-08 (8th Cir. 2003) (holding that the evidence did not create a reasonable inference of discrimination, despite the fact that plaintiff established a prima facie case and, perhaps, even set forth sufficient evidence to reject the defendant's explanations for termination). In short,

---

[3] Defendants contend that because Ayala's, Bakken's, and Gray's positions were eliminated, they must establish "some additional evidence" indicating that age was a factor in their terminations. The Court need not decide whether this case involves sufficient personnel changes to warrant analysis under the reduction-in-force standard, *see Fast*, 149 F.3d at 890, because the Court is assuming, without deciding, that each Plaintiff has established a prima facie case.

Plaintiffs must demonstrate that Defendants' proffered reasons are a pretext for illegal discrimination. *Kohrt*, 364 F.3d at 897-98. The Court notes that discrimination laws do not give courts authority to act as super-personnel departments. *See Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995); *see also Regel v. K-Mart Corp.*, 190 F.3d 876, 880 (8th Cir. 1999) (explaining that a company's exercise of business judgment is not a proper subject for judicial oversight). Thus, discrimination laws do not prohibit employment decisions based on other factors, such as job performance, erroneous evaluations, personality conflicts, or even unsound business practices. *See Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998).

    *1.    Bakken*

Defendants assert that they eliminated a number of positions, including Bakken's, for budgetary reasons. Defendants further assert that Bakken's position was eliminated largely because of performance issues. Specifically, Defendants have put forth evidence that Bakken distributed a handbook containing unapproved revisions to benefit provisions for new employees during an orientation.[4] There is no dispute that at least one section of the handbook had to be recalled and revised. Defendants have also proffered evidence that Bakken failed to establish employee benefits prior to being terminated and failed to follow staffing and budgetary guidelines when hiring. In addition, Ben Graves testified that Bakken had a different philosophy with respect to dealing with unions than that of the Hotel management.

---

[4] Bakken testified that Ben Graves asked her to "write" a new handbook. Ben Graves, however, testified that Bakken was only to modify an existing GHC handbook for use at the Hotel. Ben Graves further testified that he told Bakken that any changes to benefits or any wording changes would have to be approved by him. Bakken does not dispute that she was required to obtain Ben or Jim Graves' approval. Nor does Bakken dispute that she did not receive such approval.

6

Bakken argues that she was actually terminated because of her age. In support, Bakken claims that Defendants failed to notify her of any performance issues during her employment,[5] and that when she was terminated, she was told only that her position was being eliminated. Bakken's arguments, however, are not persuasive. First, she cites to no authority for the proposition that an employer is obligated to tell an employee that they are not satisfied with the employee's performance prior to termination or that any such failure to notify an employee of her poor performance constitutes evidence of discriminatory intent. *Cf. Mayer*, 318 F.3d at 810 (finding lack of notice employee might be terminated did not create a reasonable inference of age discrimination); *Rose-Maston*, 133 F.3d at 1109 (explaining that an employer's failure to inform an employee of what is expected is not evidence of discriminatory animus). Second, although Defendants told Bakken that her position was being eliminated, Bakken has submitted no evidence that this reason has changed. Instead, Defendants have put forth evidence that their reasons for terminating Bakken were related to both her poor performance and the Hotel's decision to eliminate her position. *Cf. Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 855 (8th Cir. 2005) (explaining that while substantial changes over time in the employer's proffered reason for termination support a finding of pretext, this does not mean an employer cannot elaborate on its reason). Thus, that Defendants told Bakken that her position was being eliminated, but did not tell her of performance issues, neither raises a material fact as to pretext nor creates a reasonable inference of discrimination.

In addition to the arguments discussed above, Bakken relies on certain alleged age-based comments and the Hotel's image to demonstrate pretext. Although some of the comments were

---

[5]   The record demonstrates that Bakken was aware that the Graves were unhappy with her performance, specifically with her decision to pass out an employee handbook with unapproved changes to employee benefit provisions.

7

neither made nor directly related to her, Bakken argues that the comments, taken together, establish discriminatory animus.[6] In addition, Bakken argues that her termination was a discriminatory "image termination."

The Court turns to the alleged age-based comments. The Court assumes that these statements were made for purposes of this motion. *See* Fed. R. Civ. P. 56. The first comments were made by Ben Graves to Robert Bormes.[7] At the time the comments were made, Bormes was the General Manager of the Hotel and was responsible for hiring hotel staff.[8] Bormes was required to involve Ben or Jim Graves when hiring for senior positions. In his affidavit, Bormes claims that Ben and Jim Graves "had concerns that people who worked at the hotel be young and fashionable." In particular, Bormes asserts that Ben and Jim Graves "stated that Le Meridien was a trendy brand hotel so staff was to be trendy, stylish and fresh." Bormes further claims that "prior to a job fair, there was an inference that staff was to be young and beautiful."

The Court acknowledges that Bakken is entitled to the benefit of all reasonable inferences, but an inference is only reasonable if it can be drawn from the evidence without speculation. *See Frieze v. Boatmen's Bank of Belton*, 950 F.2d 538, 541 (8th Cir. 1991). Here,

---

[6] Ayala, Gray, and Strauch also argue that the comments, taken together, demonstrate discriminatory animus based on age.

[7] Defendants argue the Bormes affidavit should be disregarded because it is neither sworn nor notarized. Although the affidavit reads in part "Robert Bormes, being first duly sworn upon oath, deposes and states as follows," it was not sworn and subscribed before a notary. Accordingly, it is not competent evidence on summary judgment. *See Boyer v. KRS Computer & Bus. Sch.*, 171 F. Supp. 2d 950, 960 (D. Minn. 2001) ("A document that purports to be an 'affidavit' but is not in fact sworn to and subscribed before a notary is not competent evidence on summary judgment."); *see also Garner v. Kinnear Mfg. Co.*, 37 F.3d 263, 268-69 & n.7 (7th Cir. 1994) (holding that an unsworn affidavit which was not notarized in the affiant's presence was properly disregarded). However, for the reasons discussed herein, even if Bormes' affidavit constituted competent evidence, the alleged statements therein do not raise a genuine issue of material fact as to pretext or create a reasonable inference of discrimination.

[8] In May 2003, Ben Graves replaced Bormes as the General Manager of the Hotel.

8

Bormes does not testify that either Ben or Jim Graves actually stated that Bormes was to hire "young" people. Instead, one would have to infer that one must be young to be "trendy, stylish and fresh." This inference requires speculation. Thus, this statement is too vague to raise a fact issue as to pretext or create a reasonable inference of discrimination. *See Erickson*, 271 F.3d at 730 (holding comments not facially related to age do not raise a genuine issue of fact as to pretext); *Frieze*, 950 F.2d at 542 (finding comments about an employee not being able to fit into the company's framework too vague to create a reasonable inference of age discrimination). In addition, although Bormes claims that Ben and Jim Graves "had concerns that people who worked at the hotel be young and fashionable," he does not connect these "concerns" with any specific comment other than the one discussed above, let alone a comment that can be linked to Bakken's termination. In fact, the Graves' comments were voiced prior to a job fair that took place in February or March 2003, approximately two months prior to Bakken's termination. There is no evidence of a causal connection between these alleged comments and Bakken's termination. Under these circumstances, the Court cannot conclude that these statements raise an issue of fact as to pretext. *See Hutson*, 63 F.3d at 779 (ruling that at the pretext stage, some causal relationship is necessary to demonstrate the significance of non-contemporaneous statements to the resolution of the ultimate issue of intentional discrimination); *Regan v. Natural Res. Group.*, 345 F. Supp. 2d 1000, 1015 (D. Minn. 2004) (summary judgment granted where comments were made two months prior to plaintiff's termination and were unrelated to the termination decision).

Second, Bakken relies on statements made by Ben Graves when Bormes recommended that Bakken be hired as Director of HR. According to Bormes, Ben Graves was "concerned that Ms. Bakken did not have enough energy for [the position] . . . and that she may be 'too set in her

9

ways.'"  Again, these comments are too vague to raise a fact issue as to pretext or to create a reasonable inference of discrimination.  In particular, they are not facially related to age and one would have to engage in speculation to conclude that these comments were so related.  *See Erickson*, 271 F.3d at 730 (holding comments that employee was "set in his ways"; that the company needed a "new focus"; that "twenty years [at the company] is too long"; and that employee "should have moved five years ago" are not facially related to age but appear to pertain to performance issues such as energy and enterprise and do not raise a genuine issue of fact as to pretext); *Frieze*, 950 F.2d at 542.  Moreover, these comments lack a causal connection with Bakken's termination, as they were made before Bakken was hired and approximately four months prior to her termination.

Third, Bakken relies on a comment made at a training session for a job fair in February or March 2003.  Bakken claims that Ben Graves indicated that the Hotel should be hiring to fit the image of magazine models "who looked like they stepped out of Vogue or GQ."  Although Bakken could not recall if Graves actually said that he wanted employees to be "young," she indicated "it was implied in his comment."  Again, Bakken's interpretation of his comment, which is not facially related to age, requires speculation.  Therefore, the inference she urges the Court to make (that people in Vogue or GQ must be young) is, without more, unreasonable.  *See Erickson*, 271 F.3d at 730; *Frieze*, 950 F.2d at 542.  In addition, this comment was made in February or March of 2003, approximately two months prior to Bakken's termination, and Bakken presents no link between the comment and her termination.  For these reasons, this comment does not raise a genuine issue of material fact as to pretext or create a reasonable inference of discrimination.

Fourth, Bakken relies on various portions of Ayala's deposition testimony to establish that age was a factor in her termination. When asked whether anyone made comments related to his age, Ayala answered "[j]ust to an image . . . the image they were looking for in . . . the front desk people, they were looking more for model types."[9] Ayala also testified that he remembered "them" saying that they were looking for a younger-type image. First, with respect to Ayala's testimony that the Hotel was "looking for model types," speculation is again required to infer that the Hotel was looking for "young" model types. Second, Ayala does not identify who made either of the alleged comments. Therefore, the Court cannot determine if a decisionmaker made the comments or if the comments were made in connection with Bakken's termination. Thus, the comments do not raise a genuine issue of material fact as to pretext or create a reasonable inference of discrimination.

Fifth, Bakken asserts that David Smith, the front desk manager, conveyed to Adam Welch, the HR Coordinator, that Ben Graves wanted trendy people to work at the Hotel. Welch testified during his deposition that he understood the word "trendy" to mean "someone with a nice appearance, you know, clothing-wise. You know, the hip kind of thing I guess you associate with a more -- a more younger persona, I guess." Welch further testified, however, that he never had any direct discussions with Ben Graves about the word "trendy," and did not recall whether the word "young" was used in his discussions with Smith. Again, the Court concludes that this comment is too vague to raise a genuine issue of material fact as to pretext or to create a reasonable inference of discrimination. Moreover, Bakken presents no link between this comment and her termination.

---

[9]   The Court notes that Bakken, Gray, and Ayala were not "front desk people."

Finally, Bakken relies on a comment made to Strauch when he was terminated, namely that Strauch was being terminated because he did not "follow the corporate philosophy." This comment is not facially age-based. Instead, as discussed below, it appears to pertain to legitimate job performance issues, in particular Strauch's use of profanity, which the Hotel had a policy against. In addition, Bakken has not proffered any evidence linking this comment to her termination. Thus, this comment does not raise a genuine issue of material fact as to pretext or create a reasonable inference of discrimination with respect to Bakken's termination.

Having addressed the alleged age-based comments, the Court turns to Bakken's remaining argument on pretext -- that her termination was a discriminatory "image termination." In support, Bakken relies on several cases, *see, e.g.*, *Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1345-46 (11th Cir. 2000) and *Marsh v. Coleman Co.*, 806 F. Supp. 1505, 1507 (D. Kan. 1992), the alleged age-based comments discussed above, as well as purported images from the Hotel's website. Bakken claims that images on the website demonstrate that the Hotel wanted to create a "youthful, trendy, and hip" image, and that because she was over forty, she did not fit that image. The Court finds this argument unavailing. First, as discussed above, the alleged age-based comments do not raise a genuine issue of material fact as to pretext or create a reasonable inference of discrimination with respect to Bakken's termination. Second, the cases relied on are readily distinguishable from the case at hand and none alleviate Bakken of her burden under *McDonnell Douglas*. Third, Bakken's interpretation of the Hotel's website requires too great of an inferential leap to indicate bias against her on account of age, particularly in light of the fact that Bakken was not a "front desk" employee. Finally, Bakken presents no link between the images and her termination.

*2.     Ayala*

Defendants have put forth evidence that Ayala's position was eliminated after he took a vacation in July 2003, during which Dougherty, the Executive Chef, assumed his duties. Defendants have also put forth evidence that at this time, they were reducing staffing levels in the kitchen and decided that Dougherty could manage Ayala's duties going forward.

Ayala argues that he was actually terminated because of his age. In support, he points to evidence that he was not placed in another open position at the time of his termination. This argument fails, however, because Ayala has put forth no evidence that he applied for any open position. In fact, Ayala testified that he never followed up with anyone regarding potential open positions at the Hotel.

Like Bakken, Ayala relies on the alleged age-based comments to demonstrate pretext. For the reasons discussed above, the comments are too vague to create an inference of discrimination. In addition, Ben and Jim Graves' alleged comments prior to or at the job fair in February or March 2003 were made at least four months before Ayala was terminated, and there is no evidence linking these comments to Ayala's termination. *See Regan*, 345 F. Supp. 2d at 1015. Likewise, Ben Graves' comments to Bormes regarding Bakken being "too set in her ways" and comments made regarding Strauch's termination lack a causal connection with Ayala's termination. Thus, none of the comments relied on raise a genuine issue of material fact as to pretext or create a reasonable inference of discrimination with respect to Ayala's termination. Similarly, for the reasons discussed above, Ayala's argument that his termination was a discriminatory "image termination" fails.

*3.     Gray*

Defendants assert that Gray's position was eliminated as part of the Hotel's restructuring and because she was not performing her duties adequately. Defendants have proffered evidence that Gray had difficulty performing her payroll, cashiering, and billing duties. Ben Graves testified that the Hotel eliminated her position and assigned her duties to Anderson, the Hotel's Controller, who was already performing some of Gray's duties.

Gray claims that she was not told of any performance issues during her employment, and that when she was terminated, she was told only that her position was being eliminated. In addition, Gray asserts that she was not placed in another open position at the time of her termination. Gray argues that the above evidence demonstrates that she was actually terminated because of age.

Again, Gray cites to no authority for the proposition that an employer is obligated to tell an employee that they are not satisfied with the employee's performance prior to termination or that any such failure to notify an employee of her poor performance demonstrates pretext. *Cf. Mayer*, 318 F.3d at 810; *Rose-Maston*, 133 F.3d at 1109. In addition, although the record demonstrates that Gray was told that her position was being eliminated, Gray has submitted no evidence that this reason has changed. Instead, Defendants have put forth evidence that their reasons for terminating Gray were related to both her poor performance and the Hotel's decision to eliminate her position. *Cf. Rodgers*, 417 F.3d at 855. Finally, that Gray was not placed in an open position after her termination does not support a finding of pretext in this case. Gray has put forth no evidence that she ever applied for any open position. Indeed, she testified that she never followed up with anyone regarding potential open positions at the Hotel.

14

Gray also argues that the alleged age-based comments support a finding of pretext with respect to her termination. For the reasons discussed above, the comments are too vague to create an inference of discrimination. Further, Ben and Jim Graves' alleged comments prior to or at the job fair in February or March 2003 were made before the Hotel hired Gray and approximately two months prior to her termination. There is no evidence of a causal connection between these alleged comments and Gray's termination. *See Regan*, 345 F. Supp. 2d at 1015. In addition, Ben Graves' comments to Bormes regarding Bakken being "too set in her ways" and comments regarding Strauch's termination lack a causal connection with Gray's termination. Thus, the comments do not raise a genuine issue of material fact as to pretext or create a reasonable inference of discrimination. Similarly, for the reasons discussed above, Gray's argument that her termination was a discriminatory "image termination" fails.

    *4.    Strauch*

Defendants maintain Strauch was terminated because the Hotel received complaints from neighboring businesses that he was acting rudely and using profanity in public and because his conduct violated the Hotel's prohibition of the use of profane language.[10] Defendants have submitted evidence that they received complaints about Strauch's behavior from Starbucks and Standard Parking, the Hotel's parking vendor.[11] Michael Graves, a former front office manager of the Hotel, also stated in his affidavit that he personally witnessed unprofessional behavior by Strauch.

---

[10] The Colleague Handbook provides that "use of profane language" will result in disciplinary actions that may include termination.

[11] Strauch acknowledged that he had a disagreement with "people at Standard Parking."

15

Strauch claims that he was actually terminated because of his age. In support, Strauch points to evidence that he was not notified of problems with his performance when terminated, but rather that he was told that did not "follow the corporate team philosophy." Strauch cites to no authority indicating that an employer's failure to notify an employee of his poor performance prior to termination demonstrates pretext. In addition, the record demonstrates that Strauch was terminated because the Hotel received complaints from neighboring businesses that he was acting rudely and using profanity in public and because his conduct violated the Hotel's policy prohibiting the use of profane language. While Strauch denies using profanity, he does not dispute that the Hotel received such complaints. Thus, there is no issue of material fact that the Hotel believed that Strauch engaged in inappropriate and prohibited conduct. *See Johnson v. AT & T Corp.*, 422 F.3d 756, 762-63 (8th Cir. 2005) (noting that the proper inquiry is not whether an employer is factually correct in determining whether an employee violated a code of conduct, but whether the employer honestly believed that the employee had; explaining that any mistake as to an employer's belief that an employee engaged in prohibited conduct does not automatically prove unlawful discrimination). This reason is not inconsistent with the reason Defendants gave Strauch for his termination, namely that he did not "follow the corporate team philosophy."

In addition, Strauch argues that the alleged age-based comments support a finding of pretext with respect to his termination. As explained above, the comments are too vague to create an inference of discrimination. Further, Ben and Jims Graves' alleged comments prior to or at the job fair in February or March 2003 were made before the Hotel hired Strauch and approximately three months prior to his termination. There is no evidence of a causal connection between these alleged comments and Strauch's termination. *See Regan*, 345 F. Supp. 2d at 1015. In addition, Ben Graves' comments to Bormes regarding Bakken lack a causal connection with

16

Strauch's termination. Thus, the comments do not raise a genuine issue of material fact as to pretext or create a reasonable inference of discrimination with respect to Strauch's termination. Similarly, for the reasons discussed above, Strauch's argument that his termination was a discriminatory "image termination" fails.

**B.**     *Price Waterhouse* **analysis**

Although Plaintiffs present much of their argument using the burden-shifting analysis of *McDonnell Douglas*, they also appear to argue that there is direct evidence of discrimination. Direct evidence is evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude so that a reasonable fact finder could infer that the attitude was more likely than not a motivating factor in the employer's decision. *Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 426 (8th Cir. 1999). Not all comments that may reflect a discriminatory attitude are sufficiently related to the adverse action to support such an inference. *Id.* Stray remarks in the workplace, statements by non-decisionmakers, or statements by decisionmakers unrelated to the decisional process itself are not direct evidence. *Id.* In particular, Plaintiffs argue that comments made by Ben Graves and others constitute direct evidence of discriminatory animus. The Court discussed these comments above in its analysis of Plaintiffs' evidence of pretext. Because the Court finds that the allegedly age-based comments relied on by Plaintiffs do not raise an issue of fact as to pretext or create a reasonable inference of discrimination, they likewise do not constitute direct evidence of discriminatory animus. *Cf. Erickson*, 271 F.3d at 725 (noting that comment regarding length of tenure may correlate empirically with age, but is not synonymous with age, and therefore is not direct evidence of age-based animus).

In sum, viewing the record in the light most favorable to Plaintiffs, no reasonable fact-finder could conclude Defendants' proffered legitimate, nondiscriminatory reasons for terminating Bakken, Ayala, Gray, and Strauch were pretext for age discrimination. Accordingly, the Court grants Defendants' motion for summary judgment.

### III.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' motion for summary judgment [Docket No. 70] is GRANTED.

2. Plaintiffs' Second Amended Complaint [Docket No. 27] is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  May 4, 2006

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge
